**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| RICHARD COY, ) | |
| ) | CASE NO. 1:12-cv-00381 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Richard Coy ("Coy") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying his claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

**I. Procedural History**

On September 10, 2008, Coy filed an application for POD, DIB, and SSI alleging a

disability onset date of October 25, 2000.¹ His application was denied both initially and upon reconsideration. Coy timely requested an administrative hearing.

On August 11, 2010, an Administrative Law Judge ("ALJ") held a hearing during which Coy, represented by counsel, and an impartial vocational expert ("VE") testified. On October 5, 2010, the ALJ found Coy was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II. Evidence

### *Personal and Vocational Evidence*

Age thirty-seven at the time of his administrative hearing, Coy is a "younger" person under social security regulations. *See* 20 C.F.R. §§ 404.1563 & 416.963. Coy has a high school education and attended one year of college. (Tr. 23.) He has past relevant work as a computer technician, security guard, and production worker. (Tr. 22.)

### *Hearing Testimony*

At the hearing, Coy testified as follows:

- He lives with his wife and two step-children. He has shared custody of his two biological children that live with his ex-wife. (Tr. 40.)

- He only finished the tenth grade, but obtained a GED and attended one-half year of college. (Tr. 42.)

- He had a hard time holding down a job due to anxiety and his bipolar disorder. (Tr. 48.)

- He had trouble with jobs that involved a lot of standing, as his knees and back would bother him. (Tr. 48.)

---

¹At the hearing, the alleged onset date was amended to June 1, 2002. (Tr. 13.)

2

- Since 1999, he had close to ten jobs and was fired from almost all of them primarily due to attendance issues.  (Tr. 48-49.)

- He has been using a cane, prescribed for him by a physical therapist at the VA hospital, for the past two and a half years.  (Tr. 49.)

- His primary caregiver at the Painesville VA facility is Dan Hixson, a nurse practitioner.  (Tr. 50.)

- He was scheduled to undergo an MRI on his head and neck the following day.  (Tr. 52, 54.)

- His biggest physical problems are his knees and back.  He was told six months earlier that he should get knee replacements.  (Tr. 55.)

- He underwent surgery twice on his right knee, both during the '90s, but has not undergone surgery on his left knee. (Tr. 55-56.)  The latter has been bothering him since 1994, but not with the same severity as his right knee. (Tr. 57.)  His left knee "gives out," "pops," "grinds," and becomes so stiff that sometimes it takes as long as five minutes to bend it. *Id*. At present, he thought his knees were equally bad. *Id*.

- Due to a combination of his knee and back problems, he can only stand in one place for ten to fifteen minutes before needing to sit down.  (Tr. 58.)

- Sometimes, walking is easier than standing.  He can walk about a block before he needs to stop and rest, as he experiences numbness and tingling in both legs. (Tr. 58.)  The numbness and tingling started eight to nine years earlier.  It used to be occasional but has become constant.  (Tr. 59.)

- He sees a neurologist, Dr. Chitrazas, for seizures, migraines, and the numbness and tingling in his legs.  (Tr. 60.)

- He has been experiencing migraine headaches for ten years, and they have been interfering with his ability to hold down a full-time job for the past seven years. (Tr. 60-61.)  He used to experience migraines two to four times per month but they increased about four years ago to about four to eight times per month.  (Tr. 61.)
- He takes prescribed medication for his migraines.  (Tr. 61.)  The medication "takes the edge away" and has shortened the duration of his migraines, but they can still last anywhere between two hours to three days. The medication reduces the pain to a level where he is not "praying for death."  (Tr. 62.)

3

- He described his seizures as tremors that are so bad that he cannot hang on to anything and leave him exhausted and drenched in cold sweat. (Tr. 63.) He has been experiencing these seizures for about a year and a half. (Tr. 64.) After a seizure, he usually sleeps for five to six hours and remains "in a fog" until the next day. He experiences "bad" seizures about every other day despite medication he started a month ago. (Tr. 64-65.) Prior to the new medication, he was having daily seizures. *Id*.

- He has other seizures that cause sweating and slight trembling of the hands. (Tr. 65-66.) People who have seen him experience such a seizure indicate that his speech changes completely during the seizure. (Tr. 66-67.) He experiences these smaller seizures several time a day. (Tr. 67.)

- He has problems with falling and uses a cane to steady himself. (Tr. 68.)

- Due to his back, he can only sit for fifteen minutes at a time. (Tr. 70.)

- He experiences leg spasms once or twice a day. (Tr. 70-71.)

The ALJ posed the following hypothetical to the VE:

Consider the claimant's younger age, consider the work that you've just classified, and also consider his GED education plus the three semesters of computer-related courses. Assume that he is limited to no more than light work with the need for a sit/stand option, basically every 30 minutes or so. Postural activities would be limited to occasionally, except there should be no climbing and no kneeling. No pushing or pulling with the lower extremities against any resistance. No exposure to excessive dust, smoke, fumes, chemicals, and other similar pulmonary irritants. Work should be limited to simple, routine, repetitive tasks involving no more than minimal, if any interaction with the public, coworkers, and supervisors.

(Tr. 73.)

The VE testified that Coy would be unable to perform any of his past work. (Tr. 73.) However, the VE identified assembler (73,000 jobs), hand packer (62,000), and sorter/grader (38,000) as jobs that such an individual could perform. (Tr. 73-74.) When asked whether a limitation against heights or hazard would affect the jobs identified, the VE testified that it would have no effect. (Tr. 74.) The VE testified that if a claimant could only concentrate, remember,

4

follow-through on instructions and persist at tasks on an occasional basis, all jobs would be precluded. *Id*.

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[2]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Coy was insured on his alleged disability onset date, June 1, 2002 and remained insured through March 31, 2006. (Tr. 13.) Therefore, in order to be entitled to POD and DIB, Coy must establish a continuous twelve month period of disability commencing between those dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v.*

---

[2] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

*Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when he establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Coy established medically determinable, severe impairments, due to "degenerative joint disease (DJD) of the knees, status post 2 right knee surgeries; status post testicular cancer; affective disorder; asthma; and migraine headaches." (Tr. 16.) However, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Coy was found incapable of performing his past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Coy was not disabled.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular

conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

## VI. Analysis

*Treating Physician Rule*

Coy argues that the ALJ erred by failing to give "good reasons" for the weight he assigned two of his treating physicians, Laura M. Garlisi, M.D., a psychiatrist, and Brian Koo, M.D., a neurologist. (ECF No. 15 at 15-18.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006) (*quoting* 20 C.F.R. § 404.1527(d)(2)). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[3] Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and

---

[3] Pursuant to 20 C.F.R. § 404.1527(d)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p).

On August 5, 2010, Dr. Koo completed an RFC questionnaire stating that he had been treating Coy for four months, he had "no diagnosis yet," and he did not know the patient's prognosis. (Tr. 1009.) Dr. Koo indicated that Coy suffers from migraine headaches twice per week, which were rated as 10 of 10 on the pain scale. *Id*. Coy's headaches are accompanied by nausea/vomiting and visual disturbances. *Id*. While he did not know the duration of Coy's headaches or what triggers them, he did note that medication helps while noise and bright lights makes them worse. *Id*. Dr. Koo opined that Coy's impairments could be expected to last at least twelve months and that during headaches, Coy would be precluded from performing even basic work activities. (Tr. 1010.) Dr. Koo believed that Coy needed two unscheduled breaks during a workday lasting ten to twenty minutes each. *Id*. He felt that Coy was capable of tolerating "moderate stress" jobs. *Id*. Finally, Dr. Koo indicated that Coy would be absent from work more than four days per month as a result of his impairments. *Id*.

Coy asserts that the ALJ failed to give good reasons for according Dr. Koo's opinion only minimal weight. (ECF No. 15 at 18.) In the decision, the ALJ stated that he was assigning "minimal weight" to the August 5, 2010, opinion because it was not supported by and was inconsistent with the evidence of record as a whole. (Tr. 22.) The Commissioner asserts that Dr.

9

Koo does not qualify as a treating source under the regulations because he only saw Coy twice. (ECF No. 18 at 9-11.) Furthermore, the checkbox form Dr. Koo completed was not supported by the evidence. *Id*. In his Reply brief, Coy does not challenge the assertion that Dr. Koo only treated him on two occasions. (ECF No. 20.) The Court agrees with the Commissioner that Dr. Koo does not qualify as a treating physician. Under the regulations, a "treating source" is defined as follows:

> Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (*e.g.*, twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s). We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source.

20 C.F.R. § 416.902.

In a similar case, the Sixth Circuit, in *Daniels v. Comm'r of Soc. Sec.*, 152 Fed. App'x 485 (6th Cir. 2005), found that a physician who only saw the claimant twice was not a treating physician despite the ALJ referring to the physician as a treating source. The *Daniels* court found as follows:

> Daniels next argues that Dr. Pinson's opinion was not afforded deference by the ALJ. *** The ALJ's opinion referred, in passing, to Dr. Pinson as a treating source or treating physician, thus adopting Daniels's own characterization of Dr. Pinson. *** We conclude that the treating source regulations and *Wilson* are not implicated by the facts of this case. The ALJ's failure to specifically address Dr.

10

> Pinson's opinion, despite casually referring to her as the treating source, is not surprising given that Dr. Pinson does not meet the criteria under the regulations to be defined as a treating physician. The regulations define a treating physician as a physician who has provided medical treatment or evaluation and "who has, or has had, an ongoing treatment relationship with" the claimant. 20 C.F.R. § 404.1502. The Commissioner will consider a claimant to have an ongoing treatment relationship when "the medical evidence establishes that [the claimant] see[s], or has seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." *Id*. A physician who has treated a patient only a few times may be considered a treating source if that frequency of visits is appropriate for the claimant's medical condition. *Id*. In this case, Dr. Pinson saw Daniels on two occasions, November 13, 2001, and November 16, 2001. Daniels, however, sought treatment for his back pain on many more occasions than these two visits, including six visits to the emergency room and several other visits to King's Daughters' Outreach Center. Daniels's two visits to Dr. Pinson within the span of a few days is not a frequency consistent with the treatment of back pain, as evidenced by the fact that he received treatment from other sources on many other occasions.

*Daniels*, 152 Fed. App'x at 489-91 (footnotes omitted); *accord Hakkarainen v. Astrue*, 2012 U.S. Dist. LEXIS 16431 (N.D. Ohio Jan. 19, 2012); *see also Taylor v. Astrue*, 245 Fed. Appx. 387, 391 (5th Cir. 2007) (two visits to doctor did not establish a treating relationship).

It appears that Dr. Koo saw Coy in early March of 2009 – where he is noted to be the "Attending Physician" – and on or about July 20, 2010. Two instances of treatment four months apart are not sufficient to establish a treating relationship. The Sixth Circuit has held that the regulation requiring an ALJ to provide good reasons for the weight given a treating physician's opinion does not apply to an ALJ's failure to explain his favoring of several examining physicians' opinions over others. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 506 (6th Cir. Feb. 9, 2006). The *Kornecky* Court found that:

> While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that:
>
> [a]n ALJ can consider all the evidence without directly addressing in his written

11

> decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Id.* While the regulations state that the Commissioner will "[g]enerally, ... give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you," it is the ALJ who is charged with a duty to evaluate all of the medical opinions in the record and resolve any conflicts that might appear. 20 C.F.R. §§ 404.1527(c)(4) & (e)(2). The regulations also state that the supportability of an opinion, as well as the extent to which a source is familiar with a claimant's other medical information of record, should also be factored into the decision of how much weight to ascribe to a medical source. 20 C.F.R. §§ 404.1527(d)(3) & (6). This Court cannot find that the ALJ's admittedly brief discussion of Dr. Koo's questionnaire opinion of August 5, 2010, violated any procedural standards.

The Court turns to Coy's argument as it pertains to Dr. Garlisi.[4] On August 2, 2010, Dr. Garlisi completed an "Assessment of Ability To Do Work-Related Activities (Mental)" found at Exhibit No. B22F. (Tr. 1000-1001.) Therein, Dr. Garlisi opined that Coy had "marked" degree of impairment in: (1) his ability to relate to other people; (2) his ability to maintain concentration and attention for extended periods; (3) his ability to understand, carry out and remember instructions; (4) his ability to respond appropriately to supervision; (5) his ability to respond appropriately to co-workers; (6) his ability to respond appropriately to changes in the work setting; (7) his ability to perform complex, repetitive, or varied tasks; and, (8) his ability to behave in an emotionally stable manner. (Tr. 1000-1001.) She also noted an "extreme" limitation in Coy's ability to: (1) perform activities within a schedule, to maintain regular

---

[4] Notably, the Commissioner does not challenge Dr. Garlisi's status as a treating physician.

12

attendance, and to be punctual; and, (2) respond to customary work pressures. *Id*. Dr. Garlisi noted that his condition would likely deteriorate under stress, especially under that of a job. (Tr. 1001.)

The ALJ's only explanation with respect to the weight he ascribed to Dr. Garlisi's August 2, 2010, assessment is as follows: "The undersigned [ALJ] assigns minimal weight to the opinions in Exhibit B22F.... The opinions in Exhibit B22F ... are given minimal weight because they are not supported by and they are not consistent with the record as a whole (120 CFR 404.1527 and SSR 96-6p)." The Court finds this explanation to be perfunctory and legally insufficient. Without any meaningful analysis, the Court cannot discern how Dr. Garlisi's opinion was inconsistent with the record as a whole. Because the ALJ did not provide an analysis that is sufficiently specific, Coy's argument that the ALJ failed to give good reasons for rejecting Dr. Garlisi's opinion is well-taken. The Court is unable to trace the path of the ALJ's reasoning as his analysis was insufficient under the Administration's procedural rules.

Rather than focusing on the ALJ's actual opinion, the Commissioner cites portions of the medical record that ostensibly support the ALJ's rejection. (ECF No. 18 at 12-15.) However, the Commissioner cannot cure a deficient opinion by offering explanations never offered by the ALJ. As this Court has previously noted, "arguments [crafted by defense counsel] are of no consequence, as it is the opinion given by an administrative agency rather than counsel's 'post hoc rationale' that is under the Court's consideration." *See, e.g., Bable v. Astrue*, 2007 U.S. Dist. LEXIS 83635, 27–28 (N.D. Ohio, Oct. 31, 2007) (*citing NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 715, n. 1, 121 S.Ct. 1861, 149 L.Ed.2d 939, (2001)); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996) ("we cannot uphold a decision by an administrative agency ... if, while

13

there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *cf. Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1113 (6th Cir. 1986) (rejecting Defendant's post hoc rationale that obesity is per se remediable where there was no factual basis or findings of fact in the record to support such an argument).

The Court also finds no merit to the Commissioner's argument that the ALJ was free to disregard Dr. Garlisi's opinion because it was contained in a "check a box" or "fill in the blank" form. (ECF No. 18 at 9-11.) First, the ALJ himself did not offer this explanation as a reason for rejecting the relevant opinion. Second, the Commissioner cites no binding precedent suggesting that an ALJ can ignore or disregard such checklist opinions without explanation. Because such forms are routinely provided to treating physicians to aid in disability determinations, it makes little sense to allow ALJ's to categorically ignore the information requested.

As such, Coy's assignment of error is well taken, and this matter remanded for a new decision that adequately explains the weight accorded to the various medical sources of record in compliance with 20 C.F.R. § 404.927. While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Coy can be awarded benefits only if proof of his disability is "compelling." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits only if all essential factual issues have been resolved and proof of disability is compelling). When the ALJ misapplies the regulations or when there is not substantial evidence to support one of the ALJ's factual findings and his decision therefore must be reversed, the appropriate remedy is not to

award benefits. The case can be remanded for further consideration. The Court remands this matter pursuant to "sentence four" of 42 U.S.C. § 405(g)[5] for explanation and analysis in accordance with federal regulations.

*RFC Finding*

Coy also argues that the ALJ erred at Steps Four and Five by formulating an RFC that did not accommodate the limitations the ALJ found at Step Three. (ECF No. 15 at 18-21.)

An RFC determination is an indication of an individual's work-related abilities despite their limitations. *See* 20 C.F.R. § 416.945(a). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R. § 416.945(e). As such, the ALJ bears the responsibility for assessing a claimant's RFC, based on *all* of the relevant evidence. *See* 20 C.F.R. § 416.945(a) (emphasis added). "Judicial review of the Commissioner's final administrative decision does not encompass re-weighing the evidence." *Carter v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 40828 at **21-22 (W.D. Mich. Mar. 26, 2012) (*citing Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472 (6th Cir. 1982)); *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 414 (6th Cir. 2011); *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 807 (6th Cir. 2008)).

Specifically, Coy asserts that the RFC, which limited him to "no more than simple, routine, and repetitive tasks ... [and] no more than minimal interaction with the public, coworkers, and supervisors," was insufficient to convey the moderate difficulties he was found

---

[5] Under sentence four of 42 U.S.C. § 405(g), the district court has the authority to reverse, modify, or affirm the decision of the Commissioner. This may include a remand of the case back to the Commissioner for further analysis and a new decision. A sentence four remand is a final judgment. *See Melkonyan v. Sullivan*, 501 U.S. 89, 97-102, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).

15

to have with concentration, persistence, and pace. (Tr. 18-19; ECF No. 15 at 18-19.) Coy relies on the Sixth Circuit's decision in *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (6th Cir. 2010), to support his argument. *Id*. Conversely, the Commissioner argues that the facts in *Ealy* are distinguishable from the case at bar because that plaintiff was ascribed specific speed and pace-based limitations that are not present here. (ECF No. 18 at 15-16.) The Court finds that a remand is necessary due to the ALJ's failure to give good reasons for rejecting the opinion of Dr. Garlisi and, therefore, Coy's RFC may change. Therefore, the Court declines to address this argument. Nonetheless, upon remand, if the ALJ finds that speed and pace-based functional limitations are present, the RFC should accurately account for them.

## VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner failed to apply the correct legal standards. Accordingly, the decision of the Commissioner is VACATED and the case is REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four for proceedings consistent with this opinion.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: November 13, 2012